UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

LIDIA DAYANA ALVARADO ALVARADO,

Petitioner,

v.

CHRISTOPHER J. LAROSE, Warden of Otay Mesa Detention Center; TODD BLANCHE, Attorney General of the United States of America; MARKWAYNE MULLIN, Secretary of the Department of Homeland Security; and DANIEL A. BRIGHTMAN, Director of Immigration and Customs Enforcement, ICE/ERO, San Diego Field Office,

Respondents.

Case No.: 3:26-cv-4865-JES-MMP

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

**[ECF No. 1]**

Before the Court is Petitioner Lidia Dayana Alvarado Alvarado's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on August 26, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's order to show cause, Respondents filed a Response to the petition (ECF No. 6, "Resp.") and Petitioner filed a

Traverse (ECF No. 9, "Trav."). For the reasons set forth below, the Court **GRANTS** the petition.

## I. BACKGROUND

The following facts are alleged in the Petition and are not contested by Respondents. Petitioner, a citizen of El Salvador, entered the United States with her partner on or about November 30, 2023. Pet. ¶ 12; Trav. at 2. They were detained and then released from detention on their own recognizance. Trav. at 2. Respondents (the "Government") initiated removal proceedings against Petitioner and her partner in February 2024. *Id.* Petitioner's partner applied for asylum and withholding of removal with Petitioner as his rider. Pet. Ex. A. In January of 2026, Petitioner was placed in the Intensive Supervision Appearance Program ("ISAP"), requiring her to wear an ankle monitor at home and to continue attending ICE check-in appointments ("check ins"). *Id.* ¶ 34. On April 10, 2026, the Immigration Judge denied Petitioner and her partner's I-589 Application for Asylum and Withholding of Removal and ordered them removed from the United States. *Id.* ¶ 35.

On May 11, 2026, Petitioner's counsel timely filed an appeal to the Board of Immigration Appeals ("BIA"). *Id.* ¶ 36. Despite a series of six filing rejections by the BIA and subsequent re-filings by Petitioner's counsel from May 14, 2026, to June 15, 2026, the appeal was held timely filed. *Id.* ¶¶ 37–58, Ex. T. The BIA appeal remains pending. *Id.* ¶ 97.

Throughout her removal proceedings, even after the IJ ordered her removal, Petitioner attended each of her check ins. *Id.* ¶¶ 34, 41, 48. On May 19, 2026, Petitioner was instructed to appear for a check in at the ISAP office the following week, which was six months sooner than her already scheduled November 2026 check in. *Id.* ¶ 39. On May 28, 2026, Petitioner appeared for the check in, and she and her partner were taken into the custody of ICE, who claimed there was "no record of an appeal filed" in their case. *Id.* ¶¶ 48, 51. Petitioner was sent to Caroline Detention Center and then Otay Mesa Detention Center, where she remains today. *Id.* ¶¶ 61, 66. Notably, the Petitioner's partner was released from ICE custody on August 8, 2026, following the granting of his habeas corpus

petition based on the same facts and allegations as Petitioner's. *Id.* ¶ 65. *See Erlin A.I. v. Warden et al.*, 1:26-cv-05542-RLP (E.D. Cal. Aug. 7, 2026).

## II. LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

## III. DISCUSSION

In her petition, Petitioner argues that her re-detention and the manner in which it was carried out violated the Immigration and Nationality Act and procedural due process. Pet. ¶¶ 86–97. Respondents concede that Petitioner is subject to discretionary detention under 8 U.S.C. § 1226(a) and not mandatory detention under 8 U.S.C. § 1225 for reasons set forth in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). *See generally,* Resp. Respondents also "acknowledge[] that Petitioner was previously released from immigration custody on conditional parole issued under § 1226(a)." *Id.* at 1-2. The Court analyzes Petitioner's procedural due process claim below.

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is

lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of release. The decision is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-cv-01309-JLT-SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)").

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the

> noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034–35 (N.D. Cal. 2025). Several district courts have followed suit and found due process violations where the petitioners in the cases were specifically identified to be released under Order of Release on Recognizance with an accompanying I-220 form. *See, e.g., C.A.R.V. v. Wofford*, No. 1:25-cv-01395-JLT-SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where petitioner was originally released on OREC).

The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they granted her release. *See* Trav. at 2. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that the notice and opportunity be meaningful. No. 25-cv-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Petitioner alleges that she has not been provided notice or an opportunity to be heard regarding the revocation of her parole. Pet. ¶¶ 92–97. Further, without changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-cv-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to

be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Petitioner alleges, and Respondents do not contest, that there were no changed circumstances or individualized findings in Petitioner's case justifying her re-detention. Pet. ¶ 97. *See generally* Resp. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained her in May of 2026.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus and does not reach the remainder of Petitioner's claims, as the requested relief is granted. Because the Court grants the petition on the due process grounds and concludes that Respondents' revocation of Petitioner's supervised release violates procedural due process, Respondents are **ORDERED** to **immediately** release Petitioner from custody, subject to any conditions of her preexisting release that existed at the time she was re-detained. The Parties are **ORDERED** to file a Joint Status Report by **October 7, 2026**, confirming that Petitioner has been released.

**IT IS SO ORDERED.**

Dated: September 30, 2026

Honorable James E. Simmons Jr.
United States District Judge